## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

ARTHUR MARCHESINI, JR.,           Case No.: 1:18-cv-10612

            Plaintiff,

            -against-           **COMPLAINT & JURY DEMAND**

JEDONIC HOLDINGS, LLC, MEDICAL
KNOWLEDGE GROUP, LLC, 81QD, LLC,
CIVC PARTNERS FUND IIIA, L.P, MTS
HEALTH INVESTORS, LLC (NOW
KNOWN AS WIND ROSE HEALTH
INVESTORS II, L.P.), LEON BEHAR, and
EDWARD LAZAROWITZ

            Defendants,

----------------------------------------------------x

Plaintiff, ARTHUR MARCHESINI, JR., ("Plaintiff" or "Marchesini"), by and through

his undersigned counsel, by way of Complaint and Jury Demand against Defendants, JEDONIC

HOLDINGS, LLC, MEDICAL KNOWLEDGE GROUP, LLC, 81qd, LLC, CIVC PARTNERS

FUND IIIA, L.P., MTS HEALTH INVESTORS, LLC (NOW KNOWN AS WIND ROSE

HEALTH INVESTORS II, L.P.), LEON BEHAR, and EDWARD LAZAROWITZ (collectively

"Defendants"), hereby alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.       This is an action for damages and other legal and equitable relief against

Defendants for violation of the Securities Exchange Act of 1934 (the "Exchange Act") and

Delaware securities law, common law fraudulent and negligent misrepresentation, breach of

fiduciary duty, breach of contract, retaliation, and successor liability.  As set forth below,

Defendants, Leon Behar and Edward Lazarowitz, individually and acting on behalf of the

corporate entities, made material misrepresentations and omissions in connection with the forced "repurchase" of Plaintiff's equity interest in Medical Knowledge Group, LLC, Jedonic Holdings, LLC, and/or 81qd, LLC including, without limitation, that the there was no pending or contemplated sale of the companies, that it was impossible to value Plaintiff's interest, and that the repurchase would make Plaintiff more "desirable" in the event of an eventual sale.  The foregoing representations were materially false and misleading.  To make matters worse, Plaintiff was threatened with termination if he did not acquiesce to the "repurchase."  As a result, Plaintiff is entitled to damages and other relief.

## **PARTIES**

2.      Plaintiff is an individual residing in Avalon, New Jersey.

3.      Upon information and belief, Defendant, Jedonic Holdings, LLC ("Jedonic") is a Delaware limited liability company with a principal place of business at 750 Third Avenue, Suite 1006, New York, New York 10017.  Upon information and belief, the majority owners of Jedonic prior to the transaction that gives rise to this action were: CIVC Partners Fund IIIA, L.P., Leon Behar, Edward Lazarowitz, and Jeffrey Schab.  Plaintiff was also an owner and holder of an equity interest in Jedonic.

4.      Upon information and belief, Defendant, Medical Knowledge Group, LLC ("MKG") is a Delaware limited liability company with a principal place of business at 750 Third Avenue, Suite 1006, New York, New York 10017.  Upon information and belief, MKG is a wholly owned subsidiary of Jedonic.

5.      Upon information and belief, Defendant, 81qd, LLC ("81qd") is a Delaware limited liability company with a principal place of business of 750 Third Avenue, Suite 1006, New York, New York 10017.  Upon information and belief, 81qd is a wholly owned subsidiary

of Jedonic.   MKG, 81qd, and Jedonic are collectively referred to herein as the "Jedonic Defendants."

6.      Upon information and belief, Defendant, CIVC Partners Fund IIIA, L.P. ("CIVC"), is a Delaware limited partnership with its principal place of business located at 191 N. Wacker Drive, Suite 1100, Chicago, Illinois 60606.

7.      Upon information and belief, Defendant, MTS Health Investors, LLC ("MTS"), is a Delaware limited liability company with a principal place of business at 623 Fifth Avenue, 16th Floor, New York, New York.   Upon information and belief, MTS was, or is, a private equity fund that now operates as Wind Rose Health Investors II, L.P. ("Wind Rose"), a Delaware limited partnership with its principal place of business located at 623 Fifth Avenue, 16th Floor, New York, New York.   MTS and Wind Rose are collectively referred to herein as the "MTS Defendants."

8.      Upon information and belief, Defendant, Leon Behar, is an individual residing at 8 Brittany Close, Scarsdale, NY 10583.   At all relevant times, Mr. Behar was an owner and the Chief Executive Officer of Jedonic, MKG and 81qd.

9.      Upon information and belief, Defendant, Edward Lazarowitz, is an individual residing at 12 Ann Street, Old Greenwich, CT 06870.   At all relevant times, Mr. Lazarowitz was an owner and the Chief Financial Officer and the Chief Operations Officer of Jedonic, MKG and 81qd.

## JURISDICTION AND VENUE

10.      The Court has jurisdiction over this action pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331 because it seeks relief under 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.   The

Court has supplemental jurisdiction over Plaintiff's state law claims because they are related and arise out of the same transactions and events.

11.     This Court has personal jurisdiction over Defendants pursuant to 15 U.S.C. § 78aa.  The Court also has personal jurisdiction over Defendants pursuant to Fed.R.Civ.P. 4(k) and N.Y. C.P.L.R. §§ 301 and 302 because Defendants reside or are at home within this District, transacted business within this District, committed tortious acts within New York, and/or committed tortious acts knowing that they would cause injury within New York.

12.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within the judicial district of this Court.

## BACKGROUND FACTS

13.     Plaintiff accepted a Managing Director position with the Jedonic Defendants on or about February 24, 2016.  Plaintiff was interviewed and hired by Defendant Behar and Defendant Lazarowitz.

14.     Plaintiff began his employment on or about March 16, 2016.  As Managing Director, Plaintiff reported directly to Defendant Behar, the Chief Executive Officer.

15.     Plaintiff's original compensation package, which was confirmed in a written letter agreement dated February 24, 2016 (the "Offer Agreement"), included a base salary of $255,000.00, a car allowance, and a performance bonus, among other benefits.

16.     Importantly, the Offer Agreement also included the issuance of equity to Plaintiff. The Offer Agreement expressly provided, in relevant part, as follows:

- You will be issued 750 Class C units of Jedonic Holdings, LLC, subject to vesting as outlined below and subject to the terms outlined in the Equity Agreement that is required to be signed by all Class C shareholders.

4

- 750 Units are equivalent to 11.7% of all Class C units currently issued (on a fully vested basis).  The balance of the units is held by other senior managers of the Company.

- You will be required to purchase Class C Units for a nominal capital contribution (i.e., $375 in aggregate) at closing.

- You will have the ability to make an election under Section 83(b) of the Internal Revenue Code within 30 days after your purchase the Class C Units.  Upon making this election, any appreciation of your equity will qualify under current tax laws as capital gains.

- Class C Units are entitled to share in distributions upon a sale of the Company after preference units have been paid out.

- The ultimate value for the Company and timing of a sale are unknown at this time and the Class C units are not guaranteed to have any value upon sale.

- The vesting schedule for your units is 40% at the second anniversary of your employment and 20% additional vesting at each of your third, fourth, and fifth anniversaries, respectively.

   If the Company is sold before your second anniversary, and you are still employed by the Company, your units will vest a minimum of 25%.

   The units will also be subject to accelerated vesting based on your performance at the time of a sale as follows:

| Net Revenue Above 2015 Baseline in any Calendar Year | % of Units Vested |
|---|---|
| $750,000 | 25% |
| $1,500,00 | 50% |
| $2,250,000 | 75% |
| $3,000,000 | 100% |

   The actual amount that will vest will be the greater of the vesting scenarios presented above.

- If you leave the company for any reason, unvested units are forfeited, and vested units are subject to repurchase.

17.     The Offer Agreement also provided, in relevant part, that Plaintiff would be entitled to a "transaction bonus" of $250,000 in the event of a sale if the "trailing twelve month net revenue equals or exceeds $11,000,000 at the time of the transaction close date."

18.     The equity provided for in the Offer Agreement was a material inducement to Plaintiff and Plaintiff relied upon the offer in accepting the position with the Jedonic Defendants.

19.     Plaintiff paid the required capital contribution for his shares according to the Offer Agreement.

20.     On or about August 3, 2016, Plaintiff was presented with and asked to execute the Jedonic Holdings LLC Management Equity Agreement (the "Equity Agreement").  Pursuant to the Equity Agreement, Plaintiff was issued 750.000 Class C Common Units in Jedonic.  The Equity Agreement provided that the ownership units were issued "as a part of the compensation and incentive arrangements between [Jedonic], [MKG] and its Subsidiaries and [Plaintiff]."

21.     The Equity Agreement mirrored the vesting schedule set forth in the Offer Agreement and further provided that 25% of the units "shall become vested as of the date of consummation of such Sale of [Jedonic] or Sale of [MKG], if such Sale … occurs before March 16, 2018[.]"

22.     The Equity Agreement further provided that "[a]ll issues concerning the construction, validity, enforcement and interpretation of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with the laws of the State of Delaware …."

23.     The Equity Agreement was executed by Edward Lazarowitz as "COO/CFO" of Jedonic and MKG and further provided that Marcus D. Wedner, of CIVC Partners, was the designated representative of Jedonic.

24.     Plaintiff was issued 750.000 Class C Common Units pursuant to the Equity Agreement.

25.     Plaintiff fully performed all of his obligations under the Offer Agreement and the Equity Agreement and complied with the terms thereof.  Plaintiff further dutifully performed his responsibilities as Managing Director for the Jedonic Defendants.

## MEETING OF JUNE 2017 AND PURPORTED
## FORFEITURE OF PLAINTIFF'S EQUITY

26.     On or about June 12, 2017, Plaintiff was called into a meeting by Defendant Behar at Jedonic's New York office.

27.     Plaintiff had no idea as to the purpose or agenda for the meeting and was not given any advanced notice.

28.     When Plaintiff arrived for the meeting, Defendant Behar and Defendant Lazarowitz were present.

29.     At the time of the meeting, Plaintiff had been working for the Jedonic Defendants for nearly fifteen (15) months and had fully performed all of his duties and responsibilities.

30.     During the meeting, Behar told Plaintiff that they needed to change his employment arrangement and alter his original contract.  Specifically, Behar advised Plaintiff, in no uncertain terms, that Plaintiff needed to forfeit his equity interest in the Jedonic Defendants. Behar rationalized it was "not fair" to other employees who had been there longer and further advised, inexplicably, that it could jeopardize Plaintiff's employment with the company long-term in the event of an eventual sale of the company.  Notably, Lazarowitz remained silent and refused to make eye-contact with Plaintiff.

31.     Plaintiff was taken back and was shocked and disheartened by Behar's demand. Plaintiff reminded Behar and Lazarowitz that the equity offering was a material term of the Offer

Agreement and the Equity Agreement and, as they were aware, it was a major factor in Plaintiff's decision to accept the position with the Jedonic Defendants.  Plaintiff also highlighted the fact that, in the industry, equity was a major component in total compensation and, if it had not been part of the Offer Agreement and Equity Agreement, he would have demanded a significantly higher salary, bonuses, and other benefits.

32.    Defendant Behar and Lazarowitz refused to respond to any of these issues. Instead, Behar made clear that Plaintiff had to forfeit his equity or risk losing his job all together.

33.    Plaintiff was distraught and perplexed as to why this was being brought up over 15-months into his employment and without any prior warning.  He asked Behar and Lazarowitz directly if there was a sale of the Jednoic Defendants pending, contemplated, or even being discussed with any third-party.

34.    In no uncertain terms, Behar advised Plaintiff that there was no sale pending, contemplated or even being considered at that time.  Again, Lazarowitz said nothing.

35.    Plaintiff asked Behar and Lazarowitz what his equity interest in the Jedonic Defendants was currently worth and what the repurchase price would be.

36.    Defendant Behar advised that there was no way of knowing and because it was a private company the shares were currently worth nothing.  Without an outside sale, Plaintiff's interest, according to Behar, was worth nothing.

37.    As a result, Behar advised that the Jedonic Defendants' only obligation would be to repay Plaintiff his capital contribution, nothing more.  Behar further insinuated that the Jedonic Defendants had the right to repurchase Plaintiff's interest pursuant to the foregoing terms, even without his consent, and, unless Plaintiff agreed, he would likely lose his equity as well as his job.

38. Defendant Lazarowitz was present for, and heard, each of the foregoing statements by Behar, and said nothing.

39. Shortly after the meeting, Defendant Lazarowitz provided Plaintiff with a letter dated June 13th (the "June 13 Letter") that had clearly been prepared by Defendants prior to the meeting. The letter purported to significantly alter the terms of Plaintiff's employment and, among other things, provided that Plaintiff "relinquish[ed] any claims for equity as set forth in the August 3, 2016 Management Equity Agreement." The letter, however, did not address Plaintiff's equity pursuant to the Offer Agreement or the $250,000 "transaction bonus" provided therein.

40. The June 13 Letter was signed by Defendant Lazarowitz and provided to Plaintiff with the instruction to sign and return it the same day. Plaintiff was not afforded an opportunity to review the letter or confer with his own counsel. Instead, Plaintiff either signed the letter or faced immediate termination. Plaintiff had two children in college at the time, was supporting his entire family and could not afford to lose his job on the spot. Plaintiff executed the June 13 Letter.

41. A few days later, Plaintiff was again approached by Defendant Lazarowitz, who provided him with a Repurchase Agreement dated June 19, 2017 (the "Repurchase Agreement"). When Plaintiff asked why he needed to sign another document, Defendant Lazarowitz advised that it was just a formality required in order for the Company to reimburse Plaintiff for the $375.00 capital contribution. Defendant Lazarowitz advised that it was "nothing new" and simply memorialized the terms of the June 13 Letter. Defendant Lazarowitz further advised that he needed it back by the end of the day so it could get "processed."

42.     Plaintiff was, again, afforded no opportunity to review the Repurchase Agreement or confer with his own counsel and executed and returned it in accordance with Defendant Lazarowitz's instructions.

43.     The Repurchase Agreement is grossly overbroad and was clearly hastily drawn in order to obtain Plaintiff's signature without giving him a fair opportunity for consideration.  By way of example, and certainly not limitation, the Repurchase Agreement purports to release any and all claims "which relate in any way to Executive's employment with the Company or its affiliates [or] the termination of Executive's employment…"  The Repurchase Agreement further inexplicably provides that "Executive can divulge only the fact that Executive has left his employment with the Company and nothing else."

44.     Plaintiff, however, had not been terminated and was continuing to work for the Jedonic Defendants at the time he received the Repurchase Agreement.  The foregoing language demonstrated to Plaintiff that Defendants were serious when they represented that Plaintiff would be terminated unless he forfeited his equity.

## SALE OF THE JEDONIC DEFENDANTS

45.     On or about July 28, 2018, Jedonic completed the sale of some or all of the Jedonic Defendants with the MTS Defendants purchasing a majority stake and CIVC selling some, or all, of its holdings in the Jedonic Defendants.

46.     Numerous subsequent articles reporting on the transaction, suggest that Defendant CIVC sold MKG and potentially other Jedonic Defendants' interests to the MTS Defendants, with the existing management team, including Behar and Lazarowitz, maintaining a significant ownership position.  Upon information and belief, the entire senior management team remained with the new company.

47.    The value of the transaction is not currently known or publicly available; however, the interest previously held by CIVC was originally purchased in January 2008 for nearly $36 million and represented in excess of 60% of the total equity at that time.  As such, the recent transaction with the MTS Defendants was likely significant.

## DEFENDANTS' COVER UP & RETALIATION

48.    The sale was not immediately known to the employees of the Jedonic Defendants, including Plaintiff, because there was no change in management or other day-to-day operations.

49.    When Plaintiff finally learned that a sale had gone through, he approached Defendant Lazarowitz regarding the June meeting and Defendant Behar's representations that there was no pending or contemplated sale and that it was "impossible" to value Plaintiff's equity interest, and that it was worth virtually nothing.  Plaintiff tested Lazarowitz how the sale of a multi-million dollar company could have not even been contemplated in June 2017, but was then completed only 6 weeks later.  Lazarowitz's only response was that the sale was "unexpected" and "came together very quickly."

50.    Disappointed with this obvious lie, Plaintiff then asked Lazarowitz when he would receive the $250,000.00 "transaction bonus" pursuant to the Offer Agreement. Lazarowitz appeared shocked and advised he would have to get back to Plaintiff; however, he remarked that Plaintiff would likely not be entitled to any bonus because he had forfeited his equity.

51.    Defendant Lazarowitz never followed up on the issue with Plaintiff and Plaintiff never received the "transaction bonus."

52.    Defendants improperly and illegally stripped Plaintiff of his equity interest without compensation and in breach of its multiple agreements and the law, and refused to pay

Plaintiff the earned "transaction bonus."  After Plaintiff complained to Lazarowitz, Defendants further retaliated against him by demoting him and reducing his salary by over $30,000.00 a year.  As such, Plaintiff was left with no other option but to find new work.

53.     Unable to endure the ongoing retaliation, in or about August 2018, Plaintiff provided his two-weeks' notice and terminated his employment with the Jedonic Defendants.

**COUNT ONE**
**VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT,**
**15 U.S.C. §78j(b) AND RULE 10b-5, 17 C.F.R. §240.10b-5**
**(AS AGAINST BEHAR, LAZAROWITZ,**
**JEDONIC DEFENDANTS, CIVC, AND MTS DEFENDANTS)**

54.     Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

55.     By way of the above-referenced conduct, Defendants, Behar and Lazarowitz, individually and as the agents of the Jedonic Defendants, CIVC, and/or the MTS Defendants, made false and misleading statements and omissions to Plaintiff in connection with the "repurchase" of his equity in the Jedonic Defendants.

56.     By way of example, and not limitation, Defendants falsely represented that there was no pending or contemplated sale of the Jedonic Defendants, that there was no way to value Plaintiff's equity interest, that Plaintiff's equity interest was valueless, and that retaining his equity could jeopardize Plaintiff's long-term employment.

57.     Defendants Behar and Lazarowitz were acting, at all times, individually and as the agents of the Jedonic Defendants, CIVC, and/or the MTS Defendants.

58.     Furthermore, the Jedonic Defendants, CIVC, and/or the MTS Defendants are "control persons" as that term is defined by the Exchange Act, 15 U.S.C. § 78t(a) and, as such, are jointly and severally liable for the misstatements and omissions of Defendants Behar and

Lazarowitz.

59.    The foregoing statements were knowingly false and intentionally misleading.  At the time of the foregoing statements, the Jedonic Defendants, CIVC, Behar, and Lazarowitz had been working on a sale to the MTS Defendants for months, and possibly years.  Moreover, Defendants clearly had a basis to value Plaintiff's equity interest and purposefully misrepresented that the interest was valueless.

60.    The foregoing statements were made in connection with the purchase and/or sale of securities as defined by the Exchange Act and were made with the express purpose and design of deceiving and defrauding Plaintiff.  Furthermore, the foregoing statements and ensuing request to "repurchase" Plaintiff's interest were made under the improper threat of termination.

61.    Plaintiff relied upon Defendants' representations to his detriment and, as a result, has sustained economic loss including, without limitation, the value of his vested equity interest that should have been disbursed upon the sale of the Jedonic Defendants.

62.    The foregoing conduct violates the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5, 17 C.F.R. §240.10b-5, and, as such, Plaintiff is entitled to all damages and relief available thereunder.

## COUNT TWO
### VIOLATION OF 6 DEL. C. § 73-201, ET SEQ.,
### (AS AGAINST BEHAR, LAZAROWITZ,
### JEDONIC DEFENDANTS, CIVC, AND MTS DEFENDANTS)

63.    Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

64.    At all relevant times, Defendants, Jedonic, MKG, 81qd, CIVC, MTS, and Wind Rose were and are Delaware limited liability companies and/or limited partnerships subject to the laws of the State of Delaware.  Additionally, the Equity Agreement and Repurchase

Agreement drafted by or on behalf of Defendants pertain to the sale of securities in these Delaware entities and contain Delaware choice-of-law provisions with respect to issues related thereto.  As such, Defendants are subject to Delaware law including, without limitation, 6 Del. C. § 73-201, et seq., (the "Delaware Blue Sky Law").

65.     By way of the above-referenced conduct, Defendants, Behar and Lazarowitz, individually and as the agents of the Jedonic Defendants, CIVC, and/or the MTS Defendants, made false and misleading statements and omissions to Plaintiff in connection with the "repurchase" of his equity in the Jedonic Defendants.

66.     By way of example, and not limitation, Defendants falsely represented that there was no pending or contemplated sale of the Jedonic Defendants, that there was no way to value Plaintiff's equity interest, that Plaintiff's equity interest was valueless, and that retaining his equity could jeopardize Plaintiff's long-term employment.

67.     Defendants Behar and Lazarowitz were acting, at all times, individually and as the agents of the Jedonic Defendants, CIVC, and/or the MTS Defendants.

68.     Furthermore, the Jedonic Defendants, CIVC, and/or the MTS Defendants are "control persons" as that term is defined by the Delaware Blue Sky Law, 6 Del. C. § 73-605(b) and, as such, are jointly and severally liable for the misstatements and omissions of Defendants Behar and Lazarowitz.

69.     The foregoing statements were knowingly false and intentionally misleading.  At the time of the foregoing statements, the Jedonic Defendants, CIVC, Behar, and Lazarowitz had been working on a sale of to the MTS Defendants for months, and possibly years.  Moreover, Defendants clearly had a basis to value Plaintiff's equity interest and purposefully misrepresented that the interest was valueless.

70.     The foregoing statements were made in connection with the purchase and/or sale of securities as defined by the Delaware Blue Sky Law and were made with the express purpose and design of deceiving and defrauding Plaintiff.  Furthermore, the foregoing statements and ensuing request to "repurchase" Plaintiff's interest were made under the improper threat of termination.

71.     Plaintiff relied upon Defendants' representations to his detriment and, as a result, has sustained economic loss including, without limitation, the value of his vested equity interest that should have been disbursed upon the sale of the Jedonic Defendants.

72.     The foregoing conduct violates the Delaware Blue Sky Law, 6 Del. C. § 73-201, et seq., and, as such, Plaintiff is entitled to all damages and relief available thereunder.

**COUNT THREE**
**FRAUDULENT AND/OR NEGLIGENT MISREPRESENTATION**
**(AS AGAINST BEHAR, LAZAROWITZ,**
**JEDONIC DEFENDANTS, AND CIVC)**

73.     Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

74.     At all relevant times, Plaintiff was an owner and shareholder of the Jedonic Defendants.

75.     At all relevant times, Behar and Lazarowitz were owners, shareholders, and executives of the Jedonic Defendants and CIVC and, as such, had a fiduciary duty to Plaintiff and all other shareholders to disclose material information related to the Jedonic Defendants and otherwise deal with Plaintiff in a fair and honest manner.

76.     By way of the above-referenced conduct, Defendants, Behar and Lazarowitz, individually and as the agents of the Jedonic Defendants and/or CIVC made false and misleading statements and omissions to Plaintiff in connection with the "repurchase" of his equity in the

Jedonic Defendants.

77.     By way of example, and not limitation, Defendants falsely represented that there was no pending or contemplated sale of the Jedonic Defendants, that there was no way to value Plaintiff's equity interest, that Plaintiff's equity interest was valueless, and that retaining his equity could jeopardize Plaintiff's long-term employment.

78.     The foregoing statements were knowingly and/or negligently false and misleading.  At the time of the foregoing statements, the Jedonic Defendants, CIVC, Behar, and Lazarowitz had been working on a sale of to the MTS Defendants for months, or years. Moreover, Defendants clearly had a basis to value Plaintiff's equity interest and misrepresented that the interest was valueless.

79.     The foregoing statements and omissions were made with the express purpose and design of deceiving Plaintiff.  Furthermore, the foregoing statements and ensuing request to "repurchase" Plaintiff's interest were made under the improper threat of termination.

80.     Defendant Lazarowitz made further misrepresentations in order to conceal the original fraud including, without limitation, that the July 2017 sale was unexpected and had come together quickly.  These statements were intentionally false and misleading and intended to deceive Plaintiff.

81.     Plaintiff relied upon Defendants' representations to his detriment and, as a result, has sustained economic loss including, without limitation, the value of his vested equity interest that should have been disbursed upon the sale of the Jedonic Defendants.

## COUNT FOUR
## BREACH OF CONTRACT – OFFER AGREEMENT
## (AS AGAINST THE JEDONIC DEFENDANTS)

82.     Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

83.     The Offer Agreement was a valid and enforceable contract by and between Plaintiff and the Jedonic Defendants.

84.     Plaintiff complied with and performed all of his obligations under the Offer Agreement.

85.     The Jedonic Defendants have breached the Offer Agreement by, among other things, failing to pay Plaintiff the value of his equity interest upon the sale of the companies and failing to pay Plaintiff the $250,000.00 "transaction bonus."

86.     As a direct and proximate result, Plaintiff has and will continue to sustain damages.

## COUNT FIVE
## BREACH OF CONTRACT – EQUITY AGREEMENT
## (AS AGAINST THE JEDONIC DEFENDANTS)

87.     Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

88.     The Equity Agreement was a valid and enforceable contract by and between Plaintiff and the Jedonic Defendants.

89.     Plaintiff complied with and performed all of his obligations under the Equity Agreement.

90.     The Jedonic Defendants have breached the Equity Agreement by, among other things, failing to pay Plaintiff the value of his equity interest upon the sale of the companies and failing to comply with the repurchase procedures and valuation provided for thereunder

91.     As a direct and proximate result, Plaintiff has and will continue to sustain damages.

**COUNT SIX**
**NEW YORK UNPAID WAGE CLAIM,**
**N.Y. LABOR LAW § 190, ET SEQ. ("LABOR LAW")**
**(AS AGAINST THE JEDONIC DEFENDANTS)**

92.     Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

93.     At all relevant times, Plaintiff was an "employee" as that term is defined by the Labor Law and the Jedonic Defendants were "employers" as provided thereunder.

94.     Pursuant to the Offer Agreement, the Jedonic Defendants agreed to compensate Plaintiff as part of his employment, in part, by way of a distribution upon the sale of the Company and payment of a $250,000 "transaction bonus."

95.     Pursuant to the Equity Agreement, the Jedonic Defendants agreed to compensate Plaintiff as part of his employment, in part, by way of a distribution upon the sale of the Company.

96.     The foregoing payments constitute "wages" and/or "benefits or wage supplements" as those terms are defined by the Labor Law.

97.     A sale of the Jedonic Defendants was completed in or about July 2018 and, as a result, Plaintiff's right to the equity distribution and transaction bonus provided for under the Offer Agreement and/or Equity Agreement was fully earned at that time.

98.     Notwithstanding the foregoing, the Jedonic Defendants have failed and refused to

make the required payments and, as such, Plaintiff has suffered damages.

99.     As a direct and proximate result, Plaintiff is entitled to all relief available under the Labor Law including, without limitation, all damages, penalties, costs, expenses, attorneys' fees, and pre- and post-judgment interest.

**COUNT SEVEN**
**UNLAWFUL RETALIATION,**
**N.Y. LABOR LAW § 215, ET SEQ.**
**(AS AGAINST BEHAR, LAZAROWITZ, AND THE JEDONIC DEFENDANTS)**

100.    Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

101.    At all relevant times, Plaintiff was an "employee" as that term is defined by the Labor Law and the Jedonic Defendants were "employers" as provided thereunder.

102.    Plaintiff engaged in protected activity under the Labor Law including, without limitation, complaining to Defendant Lazarowitz regarding the Jedonic Defendants failure to pay his equity interest and transaction bonus upon the sale of the Company.

103.    As a result of Plaintiff's protected activity, Defendants, Behar, Lazarowitz, and the Jedonic Defendants unlawfully retaliated against Plaintiff in violation of Labor Law § 215 including, without limitation, further slashing his salary, compensation, and other benefits.

104.    As a direct and proximate result of Defendants' wrongful conduct and retaliation, Plaintiff was constructively discharged and ultimately forced to find new employment.

105.    As a direct and proximate result, Plaintiff is entitled to all relief available under the Labor Law including, without limitation, all damages, penalties, costs, expenses, attorneys' fees, and pre- and post-judgment interest.

## COUNT EIGHT
## BREACH OF FIDUCIARY DUTY
### (AS AGAINST BEHAR AND LAZAROWITZ)

106.    Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

107.    At all relevant times, Plaintiff was an owner and holder of an equity ownership interest in the Jedonic Defendants.

108.    At all relevant times, Defendants, Behar and Lazarowitz, were officers, executives, and/or directors of the Jedonic Defendants and, as such, owed a fiduciary duty to the owners, including Plaintiff.

109.    Defendants breached their fiduciary duty to Plaintiff by way of the above-referenced wrongful conduct including, without limitation, the intentional and negligent misrepresentations made to Plaintiff regarding the sale of the Company, the subsequent cover-up, and the failure to make the required equity and other distributions to Plaintiff.

110.    As a direct and proximate result, Plaintiff has suffered damages.

## COUNT NINE
## BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING
### (AS AGAINST THE JEDONIC DEFENDANTS)

111.    Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

112.    As parties to the Offer Agreement and Equity Agreement, the Jedonic Defendants owed Plaintiff an implied duty of good faith and fair dealing.

113.    The Jedonic Defendants breached this duty by the above-referenced wrongful conduct including, without limitation, intentionally misleading Plaintiff regarding the current status surrounding the sale of the Jedonic Defendants, falsely advising Plaintiff regarding the

value of his interest and his rights regarding a repurchase, and improperly threatening Plaintiff with termination if he did not forfeit his equity.

114.    The foregoing conduct was in disregard for Plaintiff's rights and interests and was done in bad faith by Behar and Lazarowitz, individually and on behalf of the Jedonic Defendants.

115.    As a direct and proximate result, Plaintiff has suffered damages.

### COUNT TEN
### SUCCESSOR LIABILITY
### (AS AGAINST THE MTS DEFENDANTS)

116.    Plaintiff repeats and realleges all preceding paragraphs of this Complaint and incorporates them by reference as if set forth at length herein.

117.    The MTS Defendants are successors in interests to the liabilities of the Jedonic Defendants and, as such, are liable to Plaintiff for the amounts alleged to be due and owing including, without limitation, the value of his equity interest and the "transaction bonus."  The MTS Defendants are further liable for the foregoing amounts because the sale of the Jedonic Defendants acted as a de facto merger.

118.    As a direct and proximate result of the foregoing, the MTS Defendants are liable to Plaintiff for all amounts due and owing from the Jedonic Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, ARTHUR MARCHESINI, JR., demands judgment as follows:

(a)    Awarding Plaintiff all damages including, without limitation, compensatory, consequential, punitive, statutory, treble, and/or enhanced damages;

(b)    Awarding Plaintiff attorneys' fees, costs and expenses of suit, pre-judgment interest, and post-judgment interest;

(c)      Awarding Plaintiff punitive damages;

(d)      Granting Plaintiff equitable relief including, without limitation, rescission of the "repurchase" of his equity; and

(e)      Awarding Plaintiff such other further and additional relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  November 14, 2018                    **REPPERT KELLY & VYTELL LLC**


                                      BY:      */s/ Nicholas A. Vytell*_____
                                               Nicholas A. Vytell, Esq.
                                               J. Vincent Reppert, Esq.
                                               110 Allen Road, Suite 208
                                               Basking Ridge, New Jersey 07920

                                               570 Lexington Avenue, 8th Floor
                                               New York, NY 10022
                                               Tel. 908.605.2120
                                               Fax 908.605.2121
                                               jvreppert@RKVfirm.com
                                               nvytell@RKVfirm.com